**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JEAN-VENEL ALADIN, | |
| *Plaintiff*, | |
| v. | Civil No.: 1:25-cv-02706-JRR |
| CAPITAL ONE AUTO FINANCE, | |
| *Defendant*. | |

**MEMORANDUM OPINION**

Pending before the court is Defendant Capital One Auto Finance's, a division of Capital One, N.A., Motion to Dismiss. (ECF No. 5; the "Motion.") The court has reviewed all papers. Notwithstanding Plaintiff's request for hearing, none is necessary and the court declines to convene one. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion will be granted.

I. **BACKGROUND**[1]

Plaintiff Jean-Venel Aladin initiated this action against Defendant in the Circuit Court for Baltimore City, Maryland, on July 9, 2025. (ECF No. 1-2; ECF No. 2; the "Complaint.") Plaintiff titles his action as one for "Unlawful Repossession."[2] (ECF No. 2.) Plaintiff entered into a agreement on April 23, 2020 for the financing of a 2011 Toyota Sienna (the "Vehicle") that he purchased from Koons of Annapolis (the "Seller"). *Id.* at pp. 2–3.[3] According to Plaintiff, the

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 2.) *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

[2] Plaintiff asserts in a cursory fashion that Defendant's actions were "racially motivated." (ECF No. 2 at p. 3; ECF No. 12 at p. 2.) Plaintiff has alleged no facts in support of same, and the court therefore does not consider it in addressing the Motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that, to survive a Rule 12(b)(6) motion, a plaintiff's claims must provide "more than labels and conclusions").

[3] Citations to this document refer to the internal CM/ECF pagination.

Seller "defrauded the whole transaction by adding an extra $5,515.15[4] to the original price of the car without Plaintiff's . . . consent." *Id.* at p. 3.  Thus, while Plaintiff originally expected to finance $9,414.15, based on a total value of $10,615.88, the amount financed was instead increased to $14,935.15.  *Id.* at pp. 2–3.  Plaintiff learned about this purported fraud the following day (seemingly April 24, 2020), when he reviewed the relevant documents provided to him on a USB drive by the Seller.  *Id.* at pp. 3-4.  Plaintiff immediately returned to the Seller's office to request that the fraudulently added $5,515.15 be returned.  *Id.* at p. 4.  The whole amount was then "returned immediately to the Defendant." *Id.*  Notwithstanding the return of the additional amount, Defendant "opposed the modification of the loan to" "[n]ormalize the interest rate (APR) from 17% to 4.98%," "[c]hange the finance amount from $14,935.15 to [$]9,414.15," and "[m]odify the monthly payment from $399.00 to $155.00." *Id.*  In addition to the foregoing, Plaintiff also alleges that Defendant "forced [him] to pay a Per Diem of $40[.]00 every month to the Seller for the lifetime of the loan." *Id.* at pp. 4–5.

The Retail Installment Sale Contract ("RISC") regarding Plaintiff's purchase of the Vehicle identifies an Annual Percentage Rate of 16.91%, a finance charge of $6,647.15, a financed amount of $14,935.03, and a total payment amount (the amount Plaintiff will have paid after making all payments) of $21.582.18.  (ECF No. 5-1 at p. 1; the "RISC.")  The RISC lists the total sale price as $23,082.18 and notes Plaintiff's down payment of $1,500.  *Id.* The RISC includes a statement that "The Annual Percentage Rate may be negotiable with the Seller."  *Id.* at p. 6.  Finally, the RISC provides that, in the event Plaintiff fails to make timely payment or breaks other promises under the RISC, the creditor "may take the vehicle from [him]," so long as it does so "peacefully and the law allows it." *Id.* at p. 5 § 3(d).

---

[4] Plaintiff's Complaint refers both to this amount as totaling "$5,515.15" and "5,519.15."  (ECF No. 2 at pp. 1–4.)

Plaintiff does not identify any specific claims, but his Complaint is labeled as one for "Unlawful Repossession." (ECF No. 2 at p. 2.) Although it does not seem to be the basis of the claims he asserts, Plaintiff asserts "Defendant's action is a felony that shall be punished under [33 U.S.C. § 931]." *Id.* at p. 6. Defendant construes Plaintiff's Complaint to include claims of 1) violation of the Truth in Lending Act ("TILA"); 2) breach of contract; and 3) violation of 33 U.S.C. § 931. (ECF No. 5-1 at p. 3.) It also addresses conversion or unlawful repossession. *Id.* at pp. 8–9. Plaintiff's opposition makes clear his sole asserted claim is one for unlawful repossession.[5] (ECF No. 12 at p. 2–4.)[6] The court thus considers whether Plaintiff has plausibly alleged such a claim.[7]

## II.    <u>LEGAL STANDARD</u>

### A.  Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to

---

[5] This court is mindful of its obligation to construe liberally the pleadings of self-represented litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

[6] Citations to this document refer to the internal CM/ECF pagination.

[7] Further, even to the extent Plaintiff did intend to assert such claims, the court agrees with Defendant that such claims fail as a matter of law. "Under 15 U.S.C. § 1640(e), 'any action for monetary damages under TILA can be brought . . . within one year from the date of the occurrence of the violation." *Fowose v. Bank of Am., N.A.*, No. CV MJM-22-2784, 2024 WL 2955824, at *5 (D. Md. June 12, 2024) (quoting *Rice v. PNC Bank, N.A.*, Civ. No. PJM 10-07, 2010 WL 1711496, at *2 (D. Md. Apr. 26, 2010)). Further, where Maryland law applies a three-year statute of limitations on breach of contract claims, *see* MD. CODE ANN., CTS. & JUD. PROC. § 5-101, and the period "runs from the time 'when a plaintiff knows or should have known of the breach,'" *see SG Maryland, LLC v. PMIG 1024, LLC*, 264 Md. App. 245, 260 (2024), any breach of contract claim asserted by Plaintiff based on the RISC is similarly barred, where Plaintiff seemingly alleges awareness of issues with the RISC immediately after purchase, over five years before filing suit. (ECF No. 2 at pp. 2–4.) Further, Plaintiff does not allege facts to support any theory of equitable tolling. Finally, 33 U.S.C. § 931 is part of the Longshore and Harbor Workers' Compensation Act and is not relevant upon the allegations here.

dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of a complaint. The court may, however, properly consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).

Though not attached to the Complaint, the RISC sets forth the sale and financing terms, which are detailed in, and form the basis of, Plaintiff's claims; the RISC is therefore plainly integral to and relied upon in the Complaint. *See id.* *Cf. Thaler v. Donald J. Trump for President, Inc.*, 304 F. Supp. 3d 473, 478 (D. Md.), *aff'd,* 730 F. App'x 177 (4th Cir. 2018) (noting "[a] contract is integral to a breach of contract claim"). Moreover, as Plaintiff attaches pages from the RISC to his opposition, he plainly does not dispute the authenticity of the document. (ECF No. 12-1 at pp. 2–3.) The court will therefore consider it in addressing the Motion.[8]

## III.   ANALYSIS

At issue here, Defendant argues that Plaintiff's claim of unlawful repossession fails as a matter of law because Plaintiff does not allege facts (accepted as true) to show Defendant did not comport with the requirements of lawful repossession. Specifically, Defendant contends, Plaintiff does not allege that the requirements of the Retail Installment Sales Act ("RISA"), specifically MD. CODE ANN., COM. LAW ("CL") § 12-624, were not met.[9]

Relevant here, CL § 12-624 provides

> (a) The holder [meaning, "a person, including a seller and a sales finance company, entitled to enforce an agreement against a buyer"] may repossess goods sold under an agreement if:
>
>> (1) The buyer [meaning, "a person who buys or leases goods under an installment sale agreement"] is in default in:
>>
>>> (i) The payment of any sum due under the agreement;
>>>
>>> (ii) The performance of any other condition which the agreement lawfully requires him to perform in order to obtain unencumbered title to the goods; or

---

[8] To the extent Plaintiff offers additional exhibits, they are not material to the court's analysis, and the court need not address same.

[9] Defendant also asserts that "unlawful repossession" is not a standalone cause of action under Maryland law.

> (iii) The performance of any promise the breach of which is expressly made a ground for repossessing the goods[.]

CL § 12-624(a)(1). *See also id.* § 12-601(c)(1), (l). This provision also requires certain written notice be provided to the buyer upon repossession. *Id.* § 12-624(d). For 15 days after such notice, "the holder shall retain any repossessed goods in the county where the goods were sold to the buyer or were repossessed," and the buyer may redeem and take possession of the good and resume performance under the agreement were he, relevant here, to tender the amount due under the agreement. *Id.* § 12-625(a)–(c). Further, as discussed above, the RISC also provides for repossession where Plaintiff fails to make timely payment or breaks other promises under the RISC, so long as repossession is done peacefully and the law allows it. (ECF No. 5-1 at § 3(d).)

Accepting Plaintiff's alleged facts as true, Plaintiff alleges no facts to support that repossession of the Vehicle was unlawful under RISA.[10] He does not allege that Defendant was not able to enforce that provision of the RISC; he does not allege that the repossession occurred even though he made payment per the RISC; he does not allege he was not provided notice as required by RISA; he does not allege Defendant failed to follow the requirements of § 12-625(a)– (c). Plaintiff's claim instead seemingly rests on the allegation that the Seller "defrauded the whole transaction" by increasing the price of the car without his consent, and that number was then used as the basis for the calculations set forth in the RISC. Crediting Plaintiff's allegations as true, these are actions by the Seller, not Defendant. Plaintiff's allegations as to Defendant specifically concern the failure to alter the RISC in some way upon receiving the "returned" payment from the Seller, which all occurred after the RISC was executed. Importantly, Plaintiff does not allege any

---

[10] To the extent Plaintiff's claim is based in some other theory that he has not identified, he fails to provide a short and plain statement of his claim showing entitlement to relief and to give Defendant (and this court) "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

legal basis why Defendant was obliged to alter the RISC, or that any such failure diminished, impaired, or affected Defendant's entitlement and ability to repossess the Vehicle under applicable Maryland law.

Based on the foregoing, Plaintiff fails to allege a plausible claim of unlawful repossession. The court will therefore grant the Motion on that basis.

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 5) will be granted.

March 23, 2026                                    /S/

_____
Julie R. Rubin
United States District Judge